

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0887-15

**GAREIC JERARD HANKSTON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS HARRIS COUNTY

**RICHARDSON, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

Following the denial of his motion to suppress, Appellant, Gareic Jerard Hankston, was convicted of murder and was sentenced to twenty years in prison. The Fourteenth Court of Appeals affirmed Appellant's conviction, holding that the warrantless acquisition of Appellant's cell phone records from Sprint (comprised of call logs and historical cell site location information ("CSLI")) did not violate Appellant's rights under the Fourth Amendment or under Article I, Section 9 of the Texas Constitution. In light of our recent

decision in *Ford v. State*,[1] we did not grant review of Appellant's Fourth Amendment claim.[2] We did, however, agree to address an issue that was unresolved by *Ford*—whether Art. I, § 9 of the Texas Constitution affords broader protection under these facts than the Fourth Amendment provides. We hold that Appellant's rights pertaining to call logs and cell site location information possessed by a third party are the same under both the Fourth Amendment and under Art. I, § 9. We hold that the State's acquisition of Appellant's cell phone records pursuant to a court order did not violate Art. I, § 9 of the Texas Constitution. We affirm the decision of the Fourteenth Court of Appeals.

## BACKGROUND

Appellant's girlfriend, Crystal Jordan, had been stalked by Keith Brown for some time. Brown lived two houses down from Jordan's mother's house, and on several occasions he would stand outside the mother's house and watch Jordan when she visited her mother. He would leave notes on her mother's door. After Jordan moved to an apartment, Brown would still approach her. On the evening of May 19, 2011, Jordan was in her apartment when she heard a knock at the door. She looked out the window and saw someone who looked like Brown standing outside.

---

[1] 477 S.W.3d 321 (Tex. Crim. App. 2015).

[2] *See also Love v. State*, No. AP-77,024, 2016 WL 7131259, at *3 (Tex. Crim. App. December 7, 2016)(holding that "call logs and CSLI are not . . . constitutionally protected" under the Fourth Amendment).

She also saw a van that looked like Brown's. Jordan did not open her door, but instead called 911, her parents, and Appellant. The police came and went, and thereafter Jordan left her apartment to go to her mother's house. Appellant had not shown up, and she did not know where he was. Jordan testified at trial that, while she was at her mother's house, she heard gunshots. Some time thereafter, Appellant arrived at Jordan's mother's house.

Witnesses testified at trial that on that same evening Brown came home around 9:00 p.m. Shortly thereafter, someone started banging loudly on his front door. Brown started to open the door but tried to shut it again. The person on the other side of the door fired six gunshots through the door, striking and killing Brown with four of them.

In the course of investigating the murder, Appellant's cell phone records were obtained by members of law enforcement without a warrant. The cell phone records were acquired from Sprint pursuant to a sealed application and court order. The application stated that the records were being requested because law enforcement believed the records would "assist [the] investigation by providing information as to who [Hankston] was in contact with on the date of the Complainant's murder. . . . [and] will also aid in proving/disproving the defendant's whereabouts before and after the murder." Appellant was eventually charged with the murder of Keith Brown.

## A. The Motion to Suppress

Appellant filed a motion to suppress his cell phone records. At the hearing on Appellant's motion to suppress, the State agreed to stipulate that the records were obtained without a warrant. The State relied on Texas Code of Criminal Procedure Article 18.21 as authority to obtain records with only a court order.[3] The court order allowed the State to obtain cell phone records for the twelve months preceding the issuance of the order. No witnesses testified at the motion-to-suppress hearing, during which the trial court judge inspected the court order. Appellant's trial counsel argued at the hearing that the records were obtained in violation of the Fourth Amendment and in violation of Art. I, § 9 of the Texas Constitution. He also argued that the Texas Constitution provides greater protection than the Fourth Amendment under these facts. The trial court denied Appellant's motion to suppress, finding that the court order was issued in compliance with state and federal law, and finding that the disclosure did not violate the Fourth Amendment to the U.S. Constitution or Article I, Section 9 of the Texas Constitution.

---

[3] The cell phone records at issue in this case were obtained by the State using a court order issued under a prior version of article 18.21 § 5(a) of the Texas Code of Criminal Procedure. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 958, § 1, 1989 Tex. Gen. Laws 4026, 4030 (amended 2013) (current version at TEX. CODE CRIM. PROC. art. 18.21 § 5(a)). Under the prior version, a showing of probable cause was not required to obtain a court order requiring a cell phone service provider to disclose electronic customer data. *See id.* The statute required only a "reasonable belief that the information sought is relevant to a legitimate law enforcement inquiry." *Id.*

**B.** **The Trial**

At trial, the State presented Officer Michael Burrow as a witness. He was one of the investigating officers. Officer Burrow testified that, in the course of their investigation, they obtained Appellant's cell phone records by court order, and the State introduced them into evidence as business records. Officer Burrows testified that cell site location and call information was obtained "to establish what [Appellant's] pattern of behavior was the night of the incident. To see who he was in contact with, and to prove or disprove any statements that he made."

The State also presented Officer Robert Brown as a witness, who testified that the cell phone records helped establish Appellant's whereabouts during times relevant to when Brown was killed:

> Q. What does the analysis of the cell phone records and cell tower locations indicate to you, regarding the location of the defendant at the time of the 911 call?
>
> A. It indicates that he's in the area. That the time of the call being placed, in regards to this incident, that he's in that area and that he's moving in and about that area. And he's moving from that sector 3, of that tower, to the next sector and then south. In a very rapid succession or time wise.
>
> * * *
>
> Q. All right. But we do know that the murder is committed and then we have a 911 call made at 9:32 p.m.?
>
> A. Correct.

Q. And at 9:32 p.m., we have the defendant – what – what is he doing?

A. He's trans – well, the device is transitioning and it's moving.

Q. Fleeing the area? Would that be consistent with someone fleeing the area? . . . Would the activity on the defendant's cell phone be consistent with him fleeing the area at that time?

A. Yes.

The jury found Appellant guilty of the murder of Keith Brown and assessed his punishment at twenty years in prison.

## C.   **On Direct Appeal**

Appellant urged on direct appeal that the State's acquisition of his cell phone records violated the Fourth Amendment to the United States Constitution and Art. I, § 9 of the Texas Constitution. As to the Fourth Amendment challenge, the Fourteenth Court of Appeals held:

> Appellant cannot successfully claim that the State's acquisition of his cell tower records from Sprint violated his reasonable expectation of privacy. The cell site records acquired by the State are simply the business records memorializing appellant's voluntary subscriber transaction with Sprint for the service he wanted from his cellular provider, i.e. the ability to transmit and receive data on Sprint's network of cell towers. The fact that this data happens to reveal the general location of appellant's cell phone, and presumably appellant himself, at given points in time is of no consequence to the legal analysis. The State's actions did not violate appellant's Fourth Amendment rights because he could not have a reasonable expectation of privacy in information he voluntarily conveyed to a third party.[4]

---

[4] *Hankston v. State*, No. 14-13-00923-CR, 2015 WL 3751551, at *5 (Tex. App.—Houston [14th Dist.] 2015) (internal citations omitted) (not designated for publication). At the time the Fourteenth Court of Appeals decided *Hankston*, we had not issued our opinion in *Ford v. State*. The appellate court did, however, cite to the Fourth Court of Appeals opinion in *Ford v. State*, 444 S.W.3d

The court of appeals also overruled Appellant's challenge under the Texas Constitution.  Following this Court's holding in *Johnson v. State*,[5] the court of appeals held "that '[a] plain reading and comparison of the language of the Fourth Amendment and Art. I, § 9 reveals no substantive difference' and they both protect the same right."[6]  Quoting from our decision in *Crittenden v. State*,[7] the court of appeals emphasized:

> Absent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different from our preferred interpretation of the Fourth Amendment.  We will not read Article I, § 9 differently than the Fourth Amendment in a particular context simply because we *can*.[8]

The court of appeals noted that Appellant based his Texas Constitutional challenge on this Court's 1993 case of *Richardson v. State*,[9] which preceded *Johnson* and *Crittenden*.  This Court held in *Richardson* that "the use of a pen register may well constitute a 'search' under Article I, § 9 of the Texas Constitution."[10]  However, the court of appeals did not

---

171, 188 (Tex. App.—San Antonio 2014), *affirmed*, 477 S.W.3d 321 (Tex. Crim. App. 2015), along with several other cases that we cited as authority to support our holding in *Ford.*

[5] 912 S.W.2d 227 (Tex. Crim. App. 1995).

[6] *Hankston*, 2015 WL 3751551, at *6 (quoting *Johnson*, 912 S.W.2d at 232).

[7] 899 S.W.2d 668 (Tex. Crim. App. 1995).

[8] *Hankston*, 2015 WL 3751551, at *6 (citing *Crittenden*, 899 S.W.2d at 673 n.8 (emphasis in original)).

[9] 865 S.W.2d 944 (Tex. Crim. App. 1993).

[10] *Id.* at 953.

follow *Richardson*, but instead "utilize[d] Fourth Amendment precedent to conclude that the State's acquisition of appellant's cell phone records [did] not violate Article I, section 9 of the Texas Constitution."[11]

### D.     Appellant's Petition For Discretionary Review

Appellant argues that the State improperly used his cell phone records that it obtained without a warrant (but with a court order) to establish that, close to the time of the murder Appellant was near the complainant's home and that immediately thereafter his phone usage was more than any other comparable time frame in the preceding 206 days (between May 1, 2011 and November 22, 2011). Appellant claims that the Texas Constitution provides greater protection in regards to records from third parties than does the U.S. Constitution, and that, under *Richardson v. State*, this Court rejected the third party doctrine, finding that under the Texas Constitution, Art. I, § 9, a person has an expectation of privacy in the numbers they dial. According to Appellant, this same expectation of privacy applies even more to cell phones because in today's society cell phones never leave our sides, and allowing data points to be created in numerous public and private locations enables the State to virtually reconstruct one's past actions and deduce a tremendous amount of private information.

The State counters this by arguing that the Texas Constitution places no additional restrictions on the state's ability to investigate crime above and beyond the restrictions

---

[11] *Hankston*, 2015 WL 3751551, at *6.

already imposed by the U.S. Constitution. The State claims that "[i]t would be absurd to suggest that these general understandings and expectations of 'the people' change based on whether such people see themselves as Americans or as Texans. . . . [T]he reasonable expectations of the cell phone consumer are logically that of a national consumer of a nationwide product rather than the expectations of a provincial consumer of a local product." The State urges us to follow our reasoning in *Ford v. State*, disavow *Richardson*, and affirm the decision of the court of appeals because Appellant's cell phone records were legitimate business records containing information that Appellant initially conveyed to a third party. We granted Appellant's petition for discretionary review to address whether the State's acquisition of Appellant's cell phone records amounted to a search or seizure under Art. I, § 9 of the Texas Constitution.

## ANALYSIS

**A. Does Art. I, § 9 provide greater protection in this case than under the Fourth Amendment?**

Both the Fourth Amendment to the U.S. Constitution and Art. I, § 9 of the Texas Constitution protect individuals against unreasonable searches and seizures by the government. Under the Fourth Amendment,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized.[12]

In nearly identical language, Article I, § 9 provides,

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation.[13]

In 1991, in *Heitman v. State*,[14] this Court decided that it did not have to automatically adopt and apply the Supreme Court's interpretations of the Fourth Amendment to Art. I, § 9, of the Texas Constitution, even though Art. I, § 9 and the Fourth Amendment contain essentially the same wording. We held in *Heitman* that "the states are free to reject federal holdings as long as state action does not fall below the minimum standards provided by federal constitutional protections."[15] In reaching the conclusion that we are not bound by Supreme Court decisions addressing the comparable Fourth Amendment issue, we recognized "that state constitutions cannot subtract from the rights guaranteed by the United States Constitution, but they can provide additional rights to their citizens."[16]

---

[12] U.S. CONST. amend. IV.

[13] TEX. CONST. Art. I, § 9.

[14] 815 S.W.2d 681 (Tex. Crim. App. 1991).

[15] *Heitman*, at 682 (citing *Cooper v. California*, 386 U.S. 58 (1967)).

[16] *Id.* at 690.

Two years later, in *Richardson v. State*,[17] this Court addressed whether the installation and use of a pen register by law enforcement personnel required probable cause under the Texas Constitution. In *Richardson*, officers believed the appellant was controlling a cocaine and crack distribution organization using telephones located in the county jail, by placing calls to a private telephone. The officers sought court orders pursuant to Article 18.21 authorizing them to install a pen register to catalogue the telephone numbers dialed from the county jail telephone line and also the private telephone line they suspected the appellant was calling. This Court acknowledged that Art. I, § 9 and the Fourth Amendment provide the same basic protection[18] and also recognized that the purpose of both provisions is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions.[19] This Court said that, "[t]he litmus [test] for determining the existence of a legitimate expectation of privacy as to a particular accused is twofold: first, did he exhibit by his conduct 'an actual (subjective) expectation of privacy[;]' and second, if he did, was that subjective expectation, 'one that society is prepared to recognize as "reasonable."'"[20] In *Richardson*, the issue was framed as follows:

Ultimately, in the context of both the Fourth Amendment and Article I, § 9,

---

[17] 865 S.W.2d 944 (Tex. Crim. App. 1993).

[18] *Id.* at 948.

[19] *Id.*

[20] *Id.* at 948-49 (quoting *Chapa v. State*, 729 S.W.2d 723, 727 (Tex. Crim. App. 1987)).

whether the government's installation and use of a pen register constitutes a search necessarily depends upon whether appellant has a "legitimate expectation of privacy" in the numbers he dialed on the telephone. In other words, in determining the legitimacy of appellant's expectation of privacy, the appropriate inquiry is whether appellant expected that the numbers he dialed on the telephone would be free from governmental intrusion, and, if he did, is this expectation one that society is prepared to recognize as reasonable.[21]

The *Richardson* Court discussed at length the Supreme Court case of *Smith v. Maryland*,[22] acknowledging its holding that the installation and use of a pen register is not a search because an individual "entertains no actual expectation of privacy in the phone numbers he dials, and, even if he did, such an expectation is not 'legitimate.'"[23] This Court repeated the explanation given by the Supreme Court in *Smith* that telephone users "typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes."[24] The *Richardson* Court also discussed the Supreme Court opinion in *United States v. Miller*[25] holding that the Fourth Amendment does not prohibit obtaining information revealed to a third party.[26]

---

[21] *Id.* at 949.

[22] 442 U.S. 735 (1979).

[23] *Richardson*, 865 S.W.2d at 949 (quoting *Smith*, 442 U.S. at 743).

[24] *Id.* (quoting *Smith*, 442 U.S. at 743).

[25] 425 U.S. 435 (1976).

[26] *Richardson*, 865 S.W.2d at 949 (citing *Miller*, 425 U.S. at 443).

Nevertheless, the *Richardson* Court rejected the reasoning of *Smith* and *Miller*, and instead chose to side with the states that have held that their state constitutions provide an individual with a protected privacy interest in the telephone numbers dialed from a telephone.[27] This Court concluded in *Richardson* that the installation and use of a pen register was indeed a search:

> The mere fact that a telephone caller has disclosed the number called to the telephone company for the limited purpose of obtaining the services does not invariably lead to the conclusion that the caller has relinquished his expectation of privacy such that the telephone company is free to turn the information over to anyone, especially the police, absent legal process.[28]

This Court remanded the case to the court of appeals to determine whether the search was reasonable under Art. I, § 9.[29]

Only two other cases decided by this Court since *Richardson* have held that Art. I, § 9 provides greater protection than the Fourth Amendment. In 1994, in *Autran v. State*[30] a

---

[27] *Id.* at 950 (first citing *State v. Hunt*, 45 A.2d 952 (N.J. 1992); then citing *People v. Blair*, 602 P.2d 738 (Cal. 1979); then citing *Commonwealth v. Beauford*, 475 A.2d 783 (Pa. 1984); then citing *People v. Sporleder*,666 P.2d 135 (Colo. 1983); then citing *State v. Gunwall*, 720 P.2d 808 (Wash. 1986); then citing *State v. Thompson*, 760 P.2d 1162 (Idaho 1988); and then citing *Rothman v. State*, 779 P.2d 1 (Haw. 1989)).

[28] 865 S.W.2d at 951.

[29] On remand, the Court of Appeals overruled the appellant's constitutional complaint on a different ground. It held that the appellant lacked a reasonable expectation of privacy in a number that he called from a county jail telephone, and therefore he lacked standing to challenge the installation of a pen register on a line that he called. *Richardson v. State*, 902 S.W.2d 689 (Tex. App.—Amarillo 1995). No further appeals ensued.

[30] 887 S.W.2d 31 (Tex. Crim. App. 1994).

three-judge plurality decided that the Texas Constitution provided greater protection than the Fourth Amendment in the context of inventory searches.[31] In 1997, in *State v. Ibarra*,[32] this Court held that, although the federal constitution requires the State to prove voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires proof by clear and convincing evidence.[33]

Twice in 1995 this Court addressed the issue of whether Art. I, § 9 provided more protection than the Fourth Amendment—first in *Crittenden v. State*,[34] and again in *Johnson v. State*.[35] In both cases this Court found that Art. I, § 9 and the Fourth Amendment provide the same protection against unreasonable searches and seizures. In *Crittenden v. State*, this

---

[31] Since *Autran* was a plurality decision, it is not binding precedent. *See Hatcher v. State*, 916 S.W.2d 643, 645 (Tex. App.–Texarkana 1996, pet. ref'd) ("We decline . . . to follow the plurality opinion in *Autran* because we do not believe that *Autran* constitutes either binding precedent or sound law."); *Garza v. State*, 137 S.W.3d 878, 884 (Tex. App.—Houston [1ˢᵗ Dist.] 2004, pet. ref'd) (declining to follow *Autran* and instead following *Johnson v. State*, 912 S.W.2d 227 (Tex. Crim. App. 1995), holding that the Fourth Amendment decisions of the Supreme Court should be viewed as providing guidance in interpretations of Art. I, § 9); *Trujillo v. State*, 952 S.W.2d 879, 881 (Tex. App. —Dallas 1997, no pet.) ("*Autran*, a three-judge plurality opinion, is not binding precedent."); *Rothenberg v. State*, 176 S.W.3d 53, 57 (Tex. App.—Houston [1ˢᵗ Dist.] 2004, pet. ref'd) ("[T]he high court has never followed *Autran's* specific holding concerning the validity of inventories of closed containers under the Texas Constitution."); *Uballe v. State*, 439 S.W.3d 380, 385 (Tex. App.—Amarillo, 2014, pet. ref'd) (rejecting the argument that the Texas Constitution provides greater protection against unreasonable searches and seizures than the United States Constitution and declining to apply the *Autran* plurality opinion).

[32] 953 S.W.2d 242 (Tex. Crim. App. 1997).

[33] *Id*. at 245.

[34] 899 S.W.2d 668 (Tex. Crim. App. 1995).

[35] 912 S.W.2d 227 (Tex. Crim. App. 1995).

Court addressed the legality of a "pretext stop" under our state constitution analog to the Fourth Amendment. Acknowledging *Richardson*, and then departing from it, this Court held that,

> Having adopted the objective approach under the Fourth Amendment, not because of binding precedent, but because it "makes more sense" than the alternatives, we can hardly justify concluding otherwise for purposes of Article I, § 9. Indeed, we would abuse our prerogative to construe even like provisions of the state and federal constitutions differently, see *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Cr. App. 1993), and stretch judicial credibility to the breaking point, were we somehow to hold that what "makes more sense" for purposes of the Fourth Amendment does not also "make more sense" under our own state constitutional analog.[36]

In *Johnson v. State*, another plurality decision, this Court noted that "[t]he Fourth Amendment and Art. I, § 9 both protect the same right (freedom from unreasonable searches and seizures) to the same degree (persons, houses, papers, and effects/possessions)."[37] Although acknowledging that "we are not bound" by Supreme Court precedent, this Court emphasized that we are not "obliged to be different."[38] "Because we can [grant defendants greater rights under the Texas Constitution than afforded under the United States Constitution], however, does not mean that we should do so."[39] The Court acknowledged the strong similarities between the state and federal provisions and insightfully noted that,

---

[36] *Crittenden*, 899 S.W.2d at 673.

[37] *Johnson*, 912 S.W.2d at 232.

[38] *Id.* at 233.

[39] *Id*. (citing *Johnson v. State*, 864 S.W.2d 708, 718 (Tex. App.—Dallas 1993).

> It is not unreasonable to conclude . . . that the framers of the Texas Constitution chose to draft Art. I, § 9 to protect Texas citizens from unreasonable searches and seizures by the state in the same way they were protected from unreasonable searches and seizures by the federal government. If they had intended to grant to citizens greater protections from state actions than they enjoyed from federal actions, then they could have drafted Art. I, § 9 at that time to reflect that intent.[40]

Neither *Autran* nor *Johnson* is binding on this Court. However, we agree with the reasoning of *Johnson*, which mirrors the logic of *Crittenden*. With regard to *Ibarra*, we find that holding to be confined to the context where the State must prove voluntariness of consent. We are therefore more persuaded by the cases deciding that, even though we are not bound by Supreme Court case law when it comes to interpreting our State Constitution, we are not precluded from following it either. This reasoning is particularly appropriate when the state constitutional provision we are interpreting and its federal constitutional counterpart are almost identically worded. We are thus free to adopt the Supreme Court's interpretation of the Fourth Amendment, and apply it in this case, simply because it "makes more sense."[41] Therefore, as discussed below, if we are not going to find that the acquisition of cell phone records is a search under the Fourth Amendment,[42] then we are not going to find that the acquisition of cell phone records is a search under Art. I, § 9.

---

[40] *Id.* at 233-34.

[41] *Crittenden*, 899 S.W.2d at 673.

[42] See *Ford v. State* and *Love v. State*, *infra* at nn. 44, 45, and 62.

**B.**      *Ford v. State* **and** *Love v. State*

Recently, in *Love v. State*, we confirmed that "individuals do not have a privacy right in the numbers dialed on their phones."[43]  We also reiterated in *Love* that cell site location information "obtained from the records of a service provider is not protected under the Fourth Amendment."[44]  We concluded, therefore, that "call logs and CSLI are not . . . constitutionally protected."[45]

In *Ford v. State* this Court unanimously[46] decided that, under the Fourth Amendment, Jon Thomas Ford "had no legitimate expectation of privacy in records held by a third-party cell-phone company identifying which cell-phone towers communicated with his cell phone at particular points in the past."[47]  Like the *Richardson* Court, we looked at *Smith v. Maryland*[48] and *United States v. Miller*.[49]  But, unlike the *Richardson* Court, we chose to follow those cases.[50]

---

[43] 2016 WL 7131259, at *3 (citing *United States v. Miller*, 425 U.S. at 443, and *Smith v. Maryland*, 442 U.S. at 743-45).

[44] *Id*. (citing *Ford v. State*, 477 S.W.3d at 329-30, nn. 5-7).

[45] *Id*.

[46] Eight judges agreed with the decision.  Judge Yeary did not participate.

[47] *Ford*, 477 S.W.3d at 330.

[48] 442 U.S. 735 (1979).

[49] 425 U.S. 435 (1976).

[50] *Ford*, 477 S.W.3d at 329-330.  *See also In re Application of the United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 313 (3d Cir.

In *Ford* we noted that, like the bank customer in *Miller* and the phone customer in *Smith*, an appellant neither owns nor possesses the records he seeks to suppress.[51] "Rather, the cell-tower records are created by the cell-phone companies themselves and are subject to their control."[52] The cell-phone company "collects and stores this historical cell-site-location data for its own business purposes, in part to optimize service on its network[,] . . . and [t]his type of non-content evidence, lawfully created by a third-party telephone company for legitimate business purposes, does not belong to [the defendant], even if it concerns him."[53]

As in *Ford*, Appellant "voluntarily availed himself of [Sprint's] cellular service."[54] "[C]ell users know that they must transmit signals to cell towers within range, that the cell tower functions as the equipment that connects the calls, that users when making or receiving calls are necessarily conveying or exposing to their service provider their general location within that cell tower's range, and that cell phone companies make records of cell tower usage."[55] In *Ford*, we acknowledged, but declined to follow, the reasoning that "[p]eople

---

2010); *In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013); *United States v. Davis*, 785 F.3d 498, 511 (11th Cir. 2015) (en banc).

[51] *Id.* at 330.

[52] *Id.*

[53] *Id.* at 330-331 (quoting *Davis*, 785 F.3d at 511).

[54] *Id.* at 331.

[55] *Id.* at 331-32 (quoting *Davis*, 785 F.3d at 511).

cannot be deemed to have volunteered to forfeit expectations of privacy by simply seeking active participation in society through use of their cell phones."[56] We were not persuaded by the argument that cell phone users must "forego the use of technology that has become a pervasive and insistent part of modern, everyday life or forego the protections of the Fourth Amendment.[57] We noted in *Ford* that, unlike in *United States v. Jones*,[58] "there was no GPS device, no physical trespass, and no real-time or prospective cell cite location information in this case."[59] We concluded that the State's warrantless acquisition of four days' worth of historical cell site location information, recorded by Ford's cell phone service provider, did not violate the Fourth Amendment.

## C.     The third-party doctrine applies under Art. I, § 9 of the Texas Constitution.

In this case, as in *Ford*, Appellant neither owned nor possessed the records he sought to suppress. Call logs and historical CSLI are created by the cell phone companies and are subject to their control.[60] Cell phone records are clearly business records lawfully created by Sprint for legitimate business purposes. Appellant voluntarily provided his call

---

[56] *Id.* (quoting *United States v. Graham*, 796 F3d 332, 356 (4th Cir. 2015), *overruled by* 824 F.3d 421 (4th Cir. 2016) (en banc)).

[57] *Id.* (quoting *Ford v. State*, 444 S.W.3d 171, 202 (Tex. App.—San Antonio 2014) (Chapa, J., dissenting)).

[58] 565 U.S. 400 (2012).

[59] *Ford*, 477 S.W.3d at 333.

[60] *Id*. at 331 (citing *In re Application* (*Fifth Circuit*), 724 F.3d at 611-12) (concluding that cell phone companies are not required by the government to record or store CSLI).

information and historical cell site location information to Sprint so that it could perform the service for which it had contracted.

Since we have long held that the Fourth Amendment and Art. I, § 9 both protect the same right to the same degree,[61] and since we have recently held that the Fourth Amendment does not restrict law enforcement from obtaining cell phone records revealed to a third party,[62] we come to the logical conclusion that Art. I, § 9 does not restrict law enforcement from obtaining cell phone records revealed to a third party. Therefore, we decline to follow *Richardson v. State*. Other states have also held that their state constitutional counterparts to the Fourth Amendment should be similarly interpreted under this type of case.[63]

---

[61] *See Crittenden*, 899 S.W.2d at 673 ("Having adopted the objective approach under the Fourth Amendment, not because of binding precedent, but because it 'makes more sense' than the alternatives, we can hardly justify concluding otherwise for purposes of Article I, § 9."); *Johnson*, 912 S.W.2d at 232 ("A plain reading and comparison of the language of the 4th amendment and art. I sec 9 reveals no substantive difference. . . . [B]oth protect the same right (freedom from unreasonable searches and seizures) to the same degree (persons, houses, papers, and effects/possessions)."). *See also Garza v. State*, 137 S.W.3d at 884; *State v. Oages*, 227 S.W.3d 397, 400 (Tex. App.—Eastland, 2007, pet. ref'd) (relying on *Crittenden* to apply *New York v. Belton*, 453 U.S. 454 (1981) as the "bright line rule" in Texas for automobile searches incident to arrest, and also citing to *Johnson* to note that "although Texas courts can hold that defendants have greater rights under the Texas constitution, this does not mean that Texas courts should do so"); *Clark v. State*, No. 06-03-00262-CR, 2004 WL 2290262, at *2 (Tex. App.—Texarkana 2004, pet. ref'd) (mem. op.) (not designated for publication) (citing to various sister courts of appeal that similarly reject the argument that the Texas Constitution provides greater protection than the Fourth Amendment).

[62] *See Ford*, 477 S.W.3d at 329.

[63] *See State v. Mello*, 27 A.3d 771, 774 (N.H. 2011) (holding that the defendant voluntarily provided the information to Comcast, which recorded it in the ordinary course of business for billing purposes and used it to provide the defendant with Internet service; having voluntarily provided this information in order to use Comcast's service, the defendant cannot now claim a privacy interest in it); *State v. Perry*, 776 S.E.2d 528 (N.C. App. 2015) (holding that the state constitution provision provides the same protections against unreasonable search and seizure as the Fourth Amendment, and

## CONCLUSION

Addressing Appellant's claims within the framework of the Texas Constitution, Art. I, § 9, we hold that Appellant did not have a legitimate expectation of privacy in the numbers he dialed on his cell phone or the location information derived from the signals relayed by the cell towers transmitting his calls. There was a voluntary conveyance of the cell phone records, and, under the third-party doctrine, that conveyance destroyed the reasonable expectation of privacy in the conveyed information. We conclude that the State's acquisition of Appellant's cell phone records did not violate Art. I, § 9 of the Texas Constitution. We affirm the judgment of the Fourteenth Court of Appeals.

DELIVERED:        April 12, 2017

PUBLISH

---

expressly recognizing the third-party doctrine discussed in *Miller* and *Smith*).

We decline to follow Massachusetts's lead in holding that its state constitution counterpart to the Fourth Amendment provides greater protection. Massachusetts has adopted the argument that the nature of cellular telephone technology and cell phone data and the character of cellular telephone use in our current society render the third party doctrine of *Miller* and *Smith* inapposite; and it recognizes that the cellular telephone is like a permanent attachment to the user's body and thus has become an indispensable part of modern American life—necessary to social interactions as well as the conduct of business. *See*, *e.g.*, *Commonwealth v. Augustine*, 4 N.E.3d 846 (Mass. 2014) (holding that the state constitution affords more protection to individuals than the United State's constitution in relation to third party records).