NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

2d Circuit Court–Plymouth District Division
No. 2016-0187


IN RE SEARCH WARRANT FOR RECORDS FROM AT&T

Argued:  January 17, 2017
Opinion Issued:  June 9, 2017


Joseph A. Foster, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the New Hampshire Appellate Defender Program, as amicus curiae.


HICKS, J.  The State appeals an order of the Circuit Court (Rappa, J.) denying an application for a search warrant.  The trial court ruled that it lacked the authority to issue the search warrant because the application sought records held by AT&T, a foreign corporation.  We reverse.

I.  Factual Background

The following facts are gleaned from the record before us and are not materially disputed by the parties.  The State represents that AT&T is a

telecommunications company that provides, among other things, mobile telephone services to the public, that AT&T has business operations and a registered agent in New Hampshire, and that the company's custodian of records is located in Florida.

In February 2016, an Ashland police officer applied for a search warrant for certain cellular telephone records at an AT&T facility in Florida. The State sought these records in connection with a criminal investigation being conducted by the Ashland Police Department. Citing our decision in State v. Mello, 162 N.H. 115 (2011), the circuit court denied the State's application, reasoning that it "ha[d] no authority to issue a warrant against a foreign corporation."

The State thereafter filed a memorandum of law, resubmitting the warrant application and seeking reconsideration of the circuit court's order. In its memorandum, the State argued that "[u]nder Florida law, [AT&T] is required to treat an out-of-state subpoena or warrant as if it were issued by a Florida Court." It also argued, among other things, that our decision in Mello "d[id] not preclude the issuance of the warrant." (Bolding omitted.)

The circuit court denied the State's renewed application, again relying upon our decision in Mello. Although it recognized that the language from Mello it relied upon was dicta, it ruled that it was "[n]evertheless . . . obligated to follow directives from the Supreme Court." This appeal followed, presenting the question whether the circuit court has the authority to issue a search warrant authorizing the search and seizure of certain records held out of state.

II. Analysis

Before addressing the substance of the parties' claims, we provide, for context, a brief overview of territorial jurisdiction and the circuit court's role within our judicial system. "[T]erritorial jurisdiction describes the concept that only when an offense is committed within the boundaries of the court's jurisdictional geographic territory may the case be tried in that state." Hemenway v. Hemenway, 159 N.H. 680, 683 (2010) (quotation, brackets, and ellipsis omitted); see Hardy v. Betz, 105 N.H. 169, 175 (1963) (recognizing that a state's criminal law "has no operation or effect beyond its geographical or territorial limits" (quotation omitted)). Consistent with this concept, the legislature has defined the territorial jurisdiction of our Criminal Code. See RSA 625:4 (2016) (setting forth circumstances under which a person may be convicted for an offense under the laws of New Hampshire). Under certain circumstances, a court may exceed the scope of its territorial jurisdiction by issuing an extraterritorial search warrant — i.e., a warrant to search a place located outside its jurisdictional geographic territory. See 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.2(f), at 635 (5th

ed. 2012); see also State v. Esarey, 67 A.3d 1001, 1002-03 (Conn. 2013) (referring to a warrant for evidence located out of state as "extraterritorial").

Our circuit court is a statutory court of limited subject matter jurisdiction. RSA 490-F:1, :3 (Supp. 2016); State v. Laux, 167 N.H. 698, 701 (2015). The legislature established the circuit court in 2011 by merging the former probate and district courts and the former judicial branch family division. 4 G. J. MacDonald, New Hampshire Practice: Wiebusch on New Hampshire Civil Practice and Procedure § 1.07, at 1-6 (4th ed. 2014); see Laws 2011, 88:1. It conferred the "jurisdiction, powers, and duties" of these former courts upon the circuit court, and divided the circuit court into three divisions: a probate division, a district division, and a family division. RSA 490-F:3. In criminal matters, the circuit court has original jurisdiction, subject to appeal, of certain crimes and offenses "committed within the confines of the district in which such court is located." RSA 502-A:11 (Supp. 2016); see RSA 490-F:18 (Supp. 2016) (providing that, for statutes involving jurisdiction, references to probate, district, and judicial branch family division are to be considered references to the circuit court in some instances, and references to both the circuit court and superior court in others). However, each circuit court location has "the authority to hear all cases within the subject matter jurisdiction of the circuit court," and the legislature has expressly permitted "the reassignment of cases within the circuit court as justice or efficiency require[] in the discretion of the administrative judge of the circuit court." RSA 490-F:2 (Supp. 2016).

We now turn to the parties' arguments. The State contends that the circuit court would not have exceeded its territorial jurisdiction by issuing the search warrant under the circumstances of this case. It maintains that, although no New Hampshire statute expressly grants the circuit court the authority to issue extraterritorial search warrants, New Hampshire, Federal, and Florida law "work together to provide the [circuit] court with that authority." It further contends that the circuit court's reliance upon Mello was misplaced, asserting, among other things, that the language the circuit court relied upon was dicta.

In opposition, the New Hampshire Appellate Defender Program, as amicus curiae, argues that the circuit court would have exceeded its territorial jurisdiction by issuing the search warrant. It maintains that a court can validly issue a warrant authorizing a search in another state only if: (1) the issuing court's home state has a law allowing the issuance of such warrants; and (2) the state where the property is located has "a law permitting searches on the authority of out-of-state warrants." It concedes that the second of these requirements has been met, but contends that the first requirement has not. It argues not only that no New Hampshire law expressly authorizes the circuit

3

court to issue extraterritorial search warrants, but also that RSA 490-F:2 unambiguously prohibits the circuit court from doing so.

Consideration of the parties' arguments requires that we engage in statutory interpretation. The interpretation of a statute is a question of law, which we review de novo. Bank of N.Y. Mellon v. Dowgiert, 169 N.H. 200, 204 (2016). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Id. In construing its meaning, we first examine the language found in the statute, and when possible, we ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We interpret statutory provisions in the context of the overall statutory scheme. Id. Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent. Id.

We first address the significance of our decision in Mello. The defendant in Mello challenged the denial of his motion to suppress evidence, arguing that the district court lacked the authority to issue a search warrant authorizing a search for information held in New Jersey. Mello, 162 N.H. at 116-17. Without citation, we noted our agreement that the district court "did not have jurisdiction to issue a warrant to an out-of-state corporation." Id. at 118. This language, however, is dicta and is not controlling here. Our comments were unnecessary to the decision in Mello because: (1) the State conceded that the warrant was defective, id.; and (2) we held that, nevertheless, a warrant was not needed to obtain the out-of-state records sought because the defendant had no reasonable expectation of privacy in them, id. at 118, 120. Additionally, although we "outline[d] some of the proper procedures for obtaining records and evidence located outside of New Hampshire," we also explicitly recognized that these examples "d[id] not foreclose the possibility that there may be other permissible means for obtaining evidence from an out-of-state corporation." Id. at 118.

Having determined that Mello is not controlling, we now address, as a matter of first impression, the issue of whether the circuit court would have exceeded the scope of its territorial jurisdiction by issuing an extraterritorial search warrant — specifically, a warrant authorizing the search and seizure of an electronic communication service provider's records in Florida. Because the issuance of extraterritorial search warrants is not expressly prohibited by the legislature, and because the amicus has not identified any constitutional limitations applicable to these facts, we hold that the circuit court would not have exceeded its territorial jurisdiction by issuing the search warrant at issue here. Our decision today is not a broad pronouncement that the circuit court may lawfully issue extraterritorial search warrants. Rather, our holding is

4

limited to the facts of this case, and to the issue of whether the circuit court would have exceeded its territorial jurisdiction.

We first note that the Secured Communications Act (SCA), see 18 U.S.C.S. §§ 2701 et seq. (2008 & Supp. 2017), provides relevant background to our analysis.

> The SCA was enacted as part of the Electronic Communications Privacy Act of 1986, with the dual purpose of protecting the privacy of users of electronic communications by criminalizing the unauthorized access of the contents and transactional records of stored wire and electronic communications, while providing an avenue for law enforcement entities to compel a provider of electronic communication services to disclose the contents and records of electronic communications.

State v. Rose, 330 P.3d 680, 684 (Or. Ct. App. 2014) (quotation and brackets omitted). The SCA outlines the requisite procedures for obtaining certain stored data from "provider[s] of electronic communication service[s]." See 18 U.S.C. § 2703(a) (2012) (amended 2016, effective on date signed by the president). The parties appear to agree that AT&T is such a provider. One option available to governmental entities under section 2703(a) of the SCA is to obtain a "warrant . . . issued using State warrant procedures . . . by a court of competent jurisdiction." 18 U.S.C. § 2703(a). The SCA's definition of "court of competent jurisdiction" includes "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants." 18 U.S.C. § 2711(3) (2012) (quotation omitted). "The SCA does not expressly address whether a state court can issue a search warrant for . . . content located in another state." Rose, 330 P.3d at 685. Thus, we look to New Hampshire law to determine whether an extraterritorial warrant can issue in this case.

New Hampshire's search warrant statute, RSA 595-A:1 (2001), does not expressly limit the circuit court's authority to issue search warrants based upon the location of the property or article sought. The statute provides, in pertinent part, that "[a] search warrant . . . may be issued by any justice, associate justice or special justice of the . . . [circuit] or superior courts." Id.; see RSA 490-F:18. By its plain language, RSA 595-A:1 demonstrates that the circuit court has the authority to issue search warrants. Further, as the amicus appears to recognize, the statute contains no language placing a territorial limit on this authority. See RSA 595-A:1; RSA 490-F:18; cf. Mass. Gen. Laws Ann. ch. 276 § 1 (West 2014) (authorizing courts to issue search warrants for property "concealed . . . anywhere within the commonwealth and territorial waters thereof"). We, therefore, conclude that the legislature intended to grant the circuit court authority to issue extraterritorial search warrants to the extent constitutionally permissible. Cf. Computac, Inc. v. Dixie

<u>News Co.</u>, 124 N.H. 350, 355 (1983) (noting this court has interpreted long-arm statute as "coextensive with constitutional limitations"). This interpretation is consistent with the legislature's definition of the territorial jurisdiction of our Criminal Code. <u>See</u> RSA 625:4 (permitting conviction for offenses under laws of New Hampshire in certain circumstances although underlying conduct occurred out of state). Had the legislature wished to place more restrictive limitations on the circuit court's authority, it could have done so. We will not add language that the legislature did not see fit to include. <u>Bank of N.Y. Mellon</u>, 169 N.H. at 204.

We find no constitutional limitation to the circuit court's authority in this case. In its brief, the <u>amicus</u> appears to argue that the issuance of extraterritorial search warrants runs afoul of principles of state sovereignty. <u>See</u> <u>Overby v. Gordon</u>, 177 U.S. 214, 222 (1900) ("The sovereignty of the State of Georgia and the jurisdiction of its courts, however, did not extend to and embrace property not situated within the territorial jurisdiction of the State."); <u>State v. Jacob</u>, 924 N.E.2d 410, 415-16 (Ohio Ct. App. 2009) (noting that "[a]llowing one state's court to determine when property, residences, and residents of another state may be subject to search and seizure would trample the sovereignty of states"). However, it concedes that Florida law "permit[s] searches [for records held by electronic communication service providers] on the authority of out-of-state warrants." Indeed, Florida law expressly requires "business[es] that provide[] electronic communication services" to respond to a "warrant issued by another state" by producing the requested records "as if that . . . warrant had been issued by a Florida court." Fla. Stat. § 92.605(3) (2003).

We are not persuaded that RSA 490-F:2 limits the circuit court's authority to issue search warrants. RSA 490-F:2 provides:

> The circuit court shall be a court of record <u>with statewide jurisdiction</u>. Each circuit court location shall have the authority to hear all cases within the subject matter jurisdiction of the circuit court. Subject to part 1, article 17 of the New Hampshire constitution, nothing in this chapter shall prohibit the reassignment of cases within the circuit court as justice or efficiency requires in the discretion of the administrative judge of the circuit court.

RSA 490-F:2 (emphasis added). The <u>amicus</u> argues that the emphasized language limits the circuit court's territorial jurisdiction and, consequently, places a territorial limitation on its authority to issue search warrants. We disagree. To the extent that the phrase "with statewide jurisdiction" can be read as a territorial limitation, the remaining language of RSA 490-F:2 demonstrates that any such limitation relates to, in the criminal context, the

circuit court's territorial jurisdiction <u>over the offense</u>.  <u>Id</u>. (discussing "authority to hear . . . cases" and the "reassignment of cases").  Although related, the issue of a court's territorial jurisdiction over an offense and the issue of a court's authority to issue extraterritorial search warrants are separate issues. <u>See</u> <u>Wagner v. State</u>, 368 S.W.3d 914, 927 (Ark. 2010) (concluding that statute restricting court's territorial jurisdiction over offenses did not limit court's authority to issue extraterritorial search warrant).

Accordingly, we conclude that there is no statutory or constitutional barrier to the issuance of the search warrant here.  To the extent the <u>amicus</u> argues that extraterritorial search warrants may issue only if the authority is <u>expressly</u> granted by the issuing state's statute, we disagree.  It cites no authority supporting this view, and relevant authority supports the contrary position.  <u>See</u> <u>United States v. Orisakwe</u>, 624 F. App'x 149, 155 (5th Cir. 2015) (citing state laws "containing no restrictions based on a company's data being located elsewhere" and noting that that there was "no dispute" that law of issuing states authorized "search warrants issued to Facebook and Yahoo, despite these entities' storing the requested information outside the issuing state").

For the foregoing reasons, we conclude that the trial court erred in ruling that it lacked the authority to issue the search warrant for records held by AT&T in Florida.

<u>Reversed</u>.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.