**Jose Jaime CERVANTES-GUERVARA, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14-16-00104-CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed October 3, 2017

828

Douglas M. Durham, Houston, TX, for Appellant.

Molly Wurzer, Houston, TX, for State.

Panel consists of Justices Boyce, Jamison, and Brown.

## OPINION

Martha Hill Jamison, Justice

In three issues, appellant Jose Jaime Cervantes-Guervara appeals his conviction for capital murder, alleging he received ineffective assistance of counsel based on his counsel's failure to object to the trial court's admission of cell phone records obtained without a warrant and alleging the trial court erred in failing to suppress appellant's confession because the State did not show that appellant "voluntarily, knowingly, and intelligently" waived his *Miranda* rights.[1] Because the State was not required to obtain a warrant for the cell phone records at issue, we conclude that appellant failed to establish that he received ineffective assistance of counsel. We further conclude that under the totality of the circumstances, the evidence supports the trial court's conclusion that appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights and thus the trial court did not err in denying appellant's motion to suppress. We affirm.

### *Background*

The manager of a 24-hour game room was shot and killed early one morning after leaving work. His assailants, including appellant, followed him while he was driving home and transporting money in his van. When the assailants approached the van, an exchange of gunfire ensued. The van was driven away from the murder scene and abandoned.

An investigation of cell phone call logs and cell site location information led officers to identify as suspects appellant and two other people, Gricelda Delcid and William Lopez. Cell site location information reflects the location of the cell phone user based on the proximity of the phone to cell site towers while the user is speaking on the phone.[2]

The locations of the three suspects' cell phones on the day of the murder were mapped using cell site location information. Several hours before the murder, all three phones were in the vicinity of Lopez's home, which is away from the game room and eventual murder scene. At the time complainant left work, however, the three phones all were near the game room. At about the time of the shooting, Lopez, whose phone was near the murder scene, called appellant, whose phone was near the area where the van was dumped.

Appellant was detained a few months later in the Fort Bend County Jail for a

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (prohibiting use of oral statement of accused made during custodial interrogation unless certain warnings are given and accused voluntarily, knowingly, and intelligently waives rights).

2. At the time of the investigation, officers obtained such information through court orders. Under a prior version of *Texas Code of Criminal Procedure article 18.21, section 5(a)* in effect at the time, officers could obtain a court order for such cell phone records without a showing of probable cause. *Hankston v. State*, 517 S.W.3d 112, 113 n.3 (Tex. Crim. App. 2017). Investigating officer Sturdivant testified the current practice is to get a search warrant.

Delcid was established as a person of interest in the investigation, so Sturdivant obtained a court order for cell phone records pertaining to Delcid's cell phone. Her call logs showed several calls on the morning of the murder with a phone number belonging to Lopez, so Sturdivant also obtained a court order for cell phone records pertaining to Lopez's cell phone, which showed several calls that morning between Lopez's cell phone and a phone number identified as appellant's. Another investigating officer, Sergeant Bush, got a court order for cell phone records pertaining to appellant's cell phone. The records for all three phones were provided by the third party service provider T-Mobile.

different offense. Sergeant Bush and officer Mejia interviewed appellant there.[3] Appellant's statement from that interview was admitted at trial.

In his statement, appellant said that Lopez called him and offered him a "job"—to help rob complainant. Lopez believed that complainant had $50,000 in his van and offered appellant $10,000 for his participation in the job. On the morning of the murder, appellant rode to the game room in a truck with another suspect named Junior. Appellant and Junior followed complainant when he left work. Lopez followed in another vehicle. After both vehicles followed for a while, Lopez called appellant and told him to call off the job because Lopez thought complainant knew he was being followed. Junior refused and eventually pulled in front of the van, got out, approached the van, and engaged in a shootout with complainant.[4] After the gunfire, Lopez called appellant, and appellant told Lopez that complainant "fell right there ... [i]n the street."

Appellant filed several pretrial motions to suppress his statement, which the trial court denied. This court abated the appeal for the trial court to file findings of fact and conclusions of law. The trial court filed the findings and conclusions, and the appeal was reinstated.

### Discussion

Appellant argues in his first two issues that he received ineffective assistance of counsel at trial because his counsel did not object to the admission of the call logs and cell site location information pertaining to appellant's phone. Appellant contends such information was obtained by law enforcement in violation of the prohibition against unreasonable searches and seizures in the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution.[5] In his third issue, appellant argues that the trial court erred in failing to suppress appellant's custodial statement on the basis that appellant did not voluntarily, knowingly, or intelligently waive his *Miranda* rights. We will address appellant's two ineffective assistance complaints together and then turn to his *Miranda* claim.

### I. Ineffective Assistance Not Established in Failing to Object to Cell Phone Records Obtained without a Warrant

■ To prevail on an ineffective-assistance claim, a defendant must prove that counsel's representation fell below an objective standard of reasonableness and the defendant suffered prejudice from such deficiency. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9

---

3. The investigating officers were from the Houston Police Department.

4. Appellant and Junior both had guns.

5. The Fourth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, *Ker v. California*, 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Article I, Section 9 provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches." Tex. Const. art. I, § 9.

S.W.3d at 813. Counsel is not ineffective for failing to raise an objection that lacks merit. *Bradley v. State*, 359 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

■ The Court of Criminal Appeals recently held that call logs and cell site location information are not constitutionally protected under the Fourth Amendment or Article I, Section 9 because they constitute records held by a third party service provider in which appellant has no legitimate expectation of privacy. *Hankston v. State*, 517 S.W.3d 112, 121-22 (Tex. Crim. App. 2017) (holding defendant neither owned nor possessed call logs and cell site location information because they were created by cell phone companies and subject to their control and thus Article I, Section 9 did not restrict law enforcement officials from obtaining such information); *Love v. State*, No. AP-77, — S.W.3d —, —, 2016 WL 7131259, at *3 (Tex. Crim. App. Dec. 7, 2016) ("Appellant's call logs and [cell site location information] are not . . . constitutionally protected."); *Ford v. State*, 477 S.W.3d 321, 330 (Tex. Crim. App. 2015) (holding the State's receipt of cell site location information "held by a third-party cell-phone company identifying which cell-phone towers communicated with [the appellant's] cell phone at particular points in the past . . . did not violate the Fourth Amendment" and thus did not restrict law enforcement from obtaining cell phone records revealed to a third party).[6] Accordingly, an objection by trial counsel that the State was required to obtain a search warrant for the cell phone records would have lacked merit. *See*

*Hankston*, 517 S.W.3d at 120; *Ford*, 477 S.W.3d at 330.

■ Appellant cites several cases from other jurisdictions that predate *Ford* and *Hankston* and are not binding on this court. We are bound to follow the decisions of the Texas Court of Criminal Appeals, and when, as here, that court has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation. *Mayer v. State*, 494 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Appellant also cites two Supreme Court cases in support of his argument, *Riley v. California*, — U.S. —, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), and *United States v. Jones*, 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). However, these cases are distinguishable from the facts of this case. In *Riley*, the high court held that authorities must obtain a search warrant before searching the digital contents of a cell phone. 134 S.Ct. at 2485. The Court of Criminal Appeals recently distinguished *Riley* from cases involving cell phone call logs and cell site location information, noting such records, as "non-content evidence, lawfully created by the cell-phone companies themselves," are distinctive from "[r]ecords containing personal content" on a person's cell phone. *See Love*, — S.W.3d at —, 2016 WL 7131259, at *4 (citing *Riley*, 134 S.Ct. at 2485, and *Ford*, 477 S.W.3d at 321).

In *Jones*, the government, without a warrant, installed a GPS device on a suspect's vehicle to track its movements. 565 U.S. at 403, 132 S.Ct. 945. The high court held that attaching such a device to a vehicle without a warrant was an imper-

---

6. We acknowledge that *Hankston* was decided after appellant's trial. In that case, the Court of Criminal Appeals held that a defendant's rights pertaining to cell site location information possessed by a third party are the same under *both* the Fourth Amendment and Article I, Section 9. *Hankston*, 517 S.W.3d at 113. The timing of this decision does not change our analysis.

missible search under the Fourth Amendment. *Id.* at 404, 132 S.Ct. 945. The Court of Criminal Appeals distinguished *Jones* on the basis that cell phone call logs and cell site location information do not involve a GPS device, a physical trespass, or real time or prospective cell site location information. *Ford*, 477 S.W.3d at 333.

Appellant does not suggest any other grounds for excluding the cell phone records. Because any objection at trial to the State's failure to obtain a warrant for call logs and cell site location information under the Fourth Amendment or Article I, section 9 would have lacked merit, *see Bradley*, 359 S.W.3d at 919, appellant's representation did not fall below an objective standard of reasonableness.

We overrule appellant's first and second issues.

## II. Voluntary, Knowing, and Intelligent Waiver of *Miranda* Rights

■ In his third issue, appellant contends that the trial court erred in denying his motion to suppress his statement to police because the State failed to prove he voluntarily, knowingly, and intelligently waived his *Miranda* rights. Specifically, appellant claims that he was unable to waive his rights because he (1) was not a United States citizen and was not advised of his right to consular notification under the Vienna Convention;[7] (2) speaks only Spanish and does not read or write English and the warning given in Spanish did not "reasonably convey the government's obligations under *Miranda*"; (3) purportedly has a fifth grade education, a learning disability, and an IQ of 70; and (4) tried to invoke his right to counsel prior to the police interview.

■ There are three theories by which a defendant may claim that his statement was not made voluntarily, knowingly, and intelligently and thus may not be used against him: (1) failure to comply with *Miranda*; (2) violation of due process; or (3) failure to comply with article 38.22 of the Texas Code of Criminal Procedure. *Oursbourn v. State*, 259 S.W.3d 159, 169–72 (Tex. Crim. App. 2008); *Umana v. State*, 447 S.W.3d 346, 350 (Tex. App.— Houston [14th Dist.] 2014, pet. ref'd). Under the first and second theories, a confession is involuntary "only when there is police overreaching." *Oursbourn*, 259 S.W.3d at 169; *Umana*, 447 S.W.3d at 350. Absent police misconduct causally related to the confession, there is no deprivation of due process of law by a state actor and therefore no violation of the Due Process Clause. *Oursbourn*, 259 S.W.3d at 170; *Umana*, 447 S.W.3d at 350. Likewise, *Miranda* protects against government coercion to surrender Fifth Amendment rights. *Oursbourn*, 259 S.W.3d at 170; *Umana*, 447 S.W.3d at 350. Thus, due-process claims and *Miranda* claims of involuntariness involve an objective assessment of police behavior. *Oursbourn*, 259 S.W.3d at 171; *Umana*, 447 S.W.3d at 350.

■■ Claims of involuntariness based on the defendant's state of mind when making a confession are "to be resolved by state laws governing the admission of evidence." *Oursbourn*, 259 S.W.3d at 171;

---

7. The Vienna Convention is an international treaty that governs relations between individual nations and foreign consular officials. *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 366, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006). Under the Convention, a foreign national who has been arrested, imprisoned, or taken into custody has the right to contact his consulate, and the arresting government authority is required to inform the individual of such rights. Vienna Convention on Consular Relations & Optional Protocol on Disputes art. 36(1)(b), T.I.A.S. No. 6820 (U.S. Treaty Dec. 14, 1969); *Maldonado v. State*, 998 S.W.2d 239, 246 (Tex. Crim. App. 1999).

*Umana*, 447 S.W.3d at 350. That state law in Texas is article 38.22, the Texas Confession Statute. *Oursbourn*, 259 S.W.3d at 171; *Umana*, 447 S.W.3d at 350. Although claims of involuntariness under the Texas Confession Statute may be based on police overreaching, they may also be based on the defendant's state of mind. *Oursbourn*, 259 S.W.3d at 172; *Umana*, 447 S.W.3d at 350. Whether or not a suspect voluntarily waived the rights set out in article 38.22 thus can but need not be based on the behavior of the police. *Oursbourn*, 259 S.W.3d at 172; *Umana*, 447 S.W.3d at 350. The Texas Court of Criminal Appeals has held that youth, intoxication, mental capabilities, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22, but they are factors for the factfinder to consider. *Oursbourn*, 259 S.W.3d at 173; *Umana*, 447 S.W.3d at 350.

 The State has the burden of showing, by a preponderance of the evidence, that a defendant knowingly, intelligently, and voluntarily waived his rights. *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). Voluntariness is determined by looking at the totality of the circumstances, including the accused's experience, background, and conduct. *See Griffin v. State*, 765 S.W.2d 422, 429-31 (Tex. Crim. App. 1989). A confession is involuntary if the totality of the circumstances demonstrates that the confessor did not make the decision to confess of his own free will. *Umana*, 447 S.W.3d at 351.

We review a trial court's ruling on a motion to suppress under a bifurcated standard, giving almost total deference to the trial court's findings of historical fact and reviewing de novo the trial court's application of the law. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The trial court is the sole finder of fact and judge of the credibility of witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When the trial court makes express findings of fact, as here, we view the evidence in the light most favorable to its ruling and determine whether the evidence supports these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

The trial court found, in pertinent part, that the interview was conducted by Mejia in Spanish at appellant's request; Mejia's proficiency in the Spanish language was tested regularly; Mejia and Bush did not make appellant any promises of a benefit in return for his statement and appellant indicated he understood that; Mejia and Bush did not engage in any coercive conduct or threats to induce appellant into making a statement; appellant had access to food, water, and a restroom; appellant was not interrogated prior to the reading of his *Miranda* warnings; appellant's educational background did not prevent him from understanding the warnings; and appellant's voluntary statement amounted to an implied waiver of his rights. With these findings in mind, we turn to appellant's contentions regarding whether his rights were voluntarily, knowingly, and intelligently waived.

## A. Right to Contact Consulate under Vienna Convention Only a Factor

 Appellant argues that his waiver was not voluntary, knowing, and intelligent because he is a Mexican national and the officers did not notify him of his right to contact his consulate under article 36 of the Vienna Convention. *See* Vienna Convention art. 36(1)(b). As the United States Supreme Court and the Court of Criminal Appeals have held, a violation of article 36's notification requirement does not require suppression of a defendant's state-

ments to police. *Sierra v. State*, 218 S.W.3d 85, 87 (Tex. Crim. App. 2007) (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006)). However, it can be considered "[a]s part of a broader challenge to the voluntariness of [a defendant's] statements to police." *Id.* (quoting *Sanchez-Llamas*, 548 U.S. at 350, 126 S.Ct. 2669). Accordingly, we consider the officers' failure to advise appellant of his right to contact his consulate only as a factor in assessing the voluntariness of appellant's statement in the totality of the circumstances.[8] *See id.* at 88; *see also Engleton v. State*, No. 08-13-00077-CR, 2015 WL 1285202, at *3 n.2 (Tex. App.—El Paso Mar. 20, 2015, no pet.) (mem. op., not designated for publication) ("[A] failure to follow the Vienna Convention, which includes the right to contact one's consulate, does not authorize suppression of a confession or statement to the police, but can only be considered as a factor in assessing the voluntariness of a custodial statement.").

## B. Spanish Interpretation of Warnings in Substantial Compliance with *Miranda*

Appellant argues that the warnings given to him in Spanish did not "reasonably convey the government's obligations under

'*Miranda*." *Miranda* prescribes four warnings that must be provided to a defendant prior to any custodial interrogation:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Martinez-Hernandez v. State*, 468 S.W.3d 748, 758–59 (Tex. App.—San Antonio 2015, no pet.) (quoting *Miranda*, 384 U.S. at 479, 86 S.Ct. 1602).[9]

■ Courts have repeatedly held that there is not one singularly correct form of the required warnings; to the contrary, substantial compliance with *Miranda* is

---

**8.** The State argues that appellant was not in the custody *of the Houston Police Department* when he was interviewed, and thus article 36 did not apply because appellant was in custody in Fort Bend County. Our reading of article 36 is not so narrow. *See* Vienna Convention art. 36(1)(b) (requiring "competent authorities" in response to a request from a foreign national to notify the national's consulate that the national has been "arrested or committed to prison or to custody pending trial or is detained in any other manner").

The State also argues that appellant "admitted [at the suppression hearing that] he had already been warned of his rights under the Vienna Convention" when he previously was arrested by border patrol agents. The

record is not so clear. Appellant admitted that the Mexican consulate sent him an attorney for that matter: he did not articulate that he understood he was entitled to contact his consulate. Even if he had, we are not convinced that would obviate the requirement for officers to notify him of his right to contact his consulate in this case.

**9.** Article 38.22 of the Texas Code of Criminal Procedure incorporates the *Miranda* warnings with additional procedural safeguards. Tex. Code Crim. Proc. art. 38.22; *Martinez-Hernandez*, 468 S.W.3d at 759. Appellant does not contend that officers failed to comply with these additional safeguards.

sufficient. *Id.* at 759 (citing *Florida v. Powell*, 559 U.S. 50, 60, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010), and *Bible v. State*, 162 S.W.3d 234, 240–41 (Tex. Crim. App. 2005)). Because incomplete or incorrect warnings may be sufficient if they substantially comply with *Miranda*, Texas courts look to whether any alleged defect falls within the bounds of incomplete or incorrect warnings, rather than warnings that are completely omitted. *Id.*

Here, Mejia gave appellant his *Miranda* warnings in Spanish as reflected in the transcript of the interview admitted during the suppression hearing. Appellant complains about three statements by Mejia that appellant contends did not substantially comply with the *Miranda* warnings:

(1) "You have the right to remain silent ... and say absolutely nothing. Any statement you make ... can be used against you in the [l]aw. Do you understand?"

(2) "Any declaradin [incorrect Spanish] that you ... [m]ake can be used as evidence .., [a]gainst you in court."

(3) "If you cannot hire an ... attorney, you have the right for an attorney to be aseñen [incorrect Spanish] to you to advise you before or during the time that you are questioned. Do you understand that?" [10]

Appellant testified at the suppression hearing that he did not have any problems understanding Mejia except for "a word here or there." He acknowledged that both he and Mejia spoke Spanish "from Mexico." [11]

Mejia testified that he used a "blue card" to assist him in reading appellant's rights in Spanish. The State introduced the card at the hearing, which contains "warning[s] to be given before taking any oral or written confession" in English and Spanish. The card includes the word "declaración" instead of the word "declaradin," notated as "incorrect Spanish" referenced above, but Mejia testified that both words mean the same thing and the sentence using either word means "anything you say may be used against you in evidence ... in court." [12]

Mejia also testified that the word "aseñen," notated as "incorrect Spanish" referenced above, means "assign," similar to the word used on the card. Although the words are slightly different, Mejia said the meaning is the same. The full meaning of the sentence, according to Mejia, would be, "If you are unable to employ a lawyer, you have the right to have an [sic] lawyer appointed to you." After asking each of these questions, Mejia asked appellant if he understood them, and appellant said he did.

Comparing the warnings about which appellant complains with the statements enumerated by the Supreme Court in *Miranda*, we conclude that the warnings were in substantial compliance with

10. "Incorrect Spanish" notations and brackets are in the original transcript.

11. Mejia testified that he and appellant spoke the same dialect.

12. The following exchange occurred between the State's attorney and Mejia:

Q. Can you compare to the blue card, what's the incorrect word?
A. Let me see here, (speaking in Spanish, reading off the blue card.)
Q. So what's the difference between what you said and what the blue card[ ] says? Do they have similar meaning?
A. Yes.
Q. What is that meaning?
A. That meaning is anything you say may be used against you in evidence ... in court.
Q. So although the vocabulary is slightly different, is the meaning the same?
A. Yes.

the requirements of *Miranda*. Specifically, the two warnings given by Mejia that (1) "You have the right to remain silent ... and say absolutely nothing. Any statement you make ... can be used against you in the [l]aw"; and (2) "Any [statement (translated from 'declaradin')] that you ... [m]ake can be used as evidence ... [a]gainst you in court," are substantially similar to the *Miranda* warnings that "he has the right to remain silent, [and] that anything he says can be used against him in a court of law," 384 U.S. at 479, 86 S.Ct. 1602. And the warning given by Mejia that "If you cannot hire an ... attorney, you have the right for an attorney to be [assigned (translated from 'aseñen')] to you to advise you before or during the time that you are questioned" is substantially similar to the *Miranda* warning that "he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires," *id.*

■ Appellant also complains that his response to Mejia "at one point" was inaudible. But that fact does not reflect that appellant did not understand the *Miranda* warnings. The transcript reflects that Mejia said, "Okay so, we are going to talk and everything and if you don't want to talk, you can say, 'You know what, I don't want to talk anymore,' and we'll stop talking and ... [Inaudible-Crosstalk] ..." (brackets and ellipses in original). Then,

Mejia said, "[D]o you understand all those rights?" to which appellant responded, "Yes, yes, yes, I understand." [13]

## C. Educational Background and Mental Capabilities Each Only a Factor

Appellant contends that his educational background and mental capabilities demonstrate that his waiver was not voluntary, knowing, and intelligent. He asserts that he has a fifth grade education, a learning disability, and an IQ of 70, but there is no evidence in the record to support these assertions. Appellant testified that he went to school in the United States through the eighth grade and repeated the third grade twice. He did not testify that he has a learning disability, and there is no evidence in the record of his IQ.[14] However, as the State had the burden of proof on this issue, we will analyze the evidence in the record regarding whether appellant's educational background and mental capabilities prevented him from understanding the warnings.

■ A confessor's education and mental capabilities are only two factors among many to be evaluated in the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 241 (Tex. Crim. App. 2007); *Umana*, 447 S.W.3d at 351. In this connection, whether the accused has a low IQ is but one characteristic to consider. *Delao*, 235

---

13. Appellant also argues that his responses indicating he understood Mejia's questions do not demonstrate a waiver of his rights. However, an express waiver is not required. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010); *Umana*, 447 S.W.3d at 356. Although a valid waiver is not presumed either from the silence of the accused after warnings are given or from the fact that an admission is obtained, it can be inferred from the actions and words of the interrogated person. *Joseph*, 309 S.W.3d at 24; *Umana*, 447 S.W.3d at 356. It is within the trial court's discretion to rely upon an implied waiver when the totality of

the circumstances, as reflected by the recorded oral statement, supports it. *Umana*, 447 S.W.3d at 356. If the recording shows the warnings were received and understood by the accused and he does not invoke his rights, the accused waived the right to remain silent by making an uncoerced statement to the police. *Id.*

14. Appellant stated in his motion to suppress that he had an IQ of 70, but no evidence was introduced to support this assertion.

S.W.3d at 241; *Umana*, 447 S.W.3d at 351. During the hearing, Mejia said that appellant appeared to understand the questions posed to him. Mejia testified, "[Appellant was] responsive.... [W]hen he started talking about what had occurred he was in details [sic]. He was making eye contact." Mejia further stated that appellant did not say anything to lead him to believe appellant "was of low intelligence." Mejia did not have to use "simple words" with appellant and did not "employ any interrogation techniques that were designed to take advantage of someone with low intelligence."

**D. No Invocation of Right to Counsel**

Appellant further contends that he invoked his right to counsel before making his statement. Appellant testified at the suppression hearing that while he was incarcerated in Fort Bend County, the jailer came and told him that some detectives wanted to talk to him. According to appellant, he told the jailer he wanted a lawyer. The jailer responded that appellant would have to talk to the detectives about that. Mejia testified that appellant did not ask for an attorney during the interview or ask for the interview to be terminated, which is demonstrated by the recorded interview and transcript of the interview admitted during the hearing.

■■■ Once a person invokes his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by merely showing that the suspect responded to police initiated interrogation after being advised of his rights. *Pecina v. State*, 361 S.W.3d 68, 75 (Tex. Crim. App. 2012) (citing *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). Thus, the police must give *Miranda* warnings during the process of custodial interrogation but before questioning actually begins. *Id.* However, a person cannot invoke his *Miranda* rights anticipatorily in a context other than custodial interrogation. *Id.* (citing *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). A defendant who does not want to speak to the police without counsel present must assert that right to the police when he is given the *Miranda* warnings. *Id.* Thus, "the police may not continue or re-initiate custodial interrogation of a suspect who has previously requested assistance of counsel *after the police informed him of his right to counsel at the beginning of a custodial interrogation.*" *Id.* at 80 (emphasis in original). In reviewing whether an accused invoked his right to counsel, we use an objective standard: the accused must unambiguously request counsel during a custodial interrogation "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 79 (quoting *Davis v. U.S.*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)).

**E. In Totality of Circumstances, Trial Court Did Not Err in Concluding Rights Voluntarily, Knowingly, and Intelligently Waived**

■■■ We conclude that the trial court's findings are supported by the record. The evidence in the record does not reflect any overreaching or misconduct on the part of the police, and appellant does not argue that any occurred. *See Umana*, 447 S.W.3d at 356. Appellant requested the interview to be in Spanish, and there is every indication that he understood the questions posed to him. Mejia read appellant his *Miranda* warnings before interrogating him, which were in substantial compliance with the required warnings articulated in *Miranda*, and appellant did not request an attorney during the custodial interrogation. Appellant did not give any indication

that his educational background or mental capabilities prevented him from understanding Mejia's questions, and no evidence of his IQ was introduced. We further conclude that, considering the totality of the circumstances, the officers' failure to advise appellant of his right to contact his consulate does not establish that appellant's waiver was not voluntary, knowing, or intelligent.

We accordingly conclude, in the totality of the circumstances, that appellant's waiver of his rights was voluntarily made with full awareness of the nature of those rights and the consequences of waiving them. *See id.* at 351. Accordingly, we conclude that the trial court did not err in denying appellant's motion to suppress.

We overrule appellant's third issue.

### *Conclusion*

Because trial counsel did not provide ineffective assistance in failing to object to cell phone records obtained without a warrant and because under the totality of the circumstances, the evidence supports the trial court's conclusion that appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights, we affirm the judgment of the trial court.

