**Affirmed and Memorandum Opinion filed February 24, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00154-CR

---

### SHERWIN MATTHEW SIMPLE, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 85187-CR**

---

### MEMORANDUM OPINION

A jury convicted appellant Sherwin Matthew Simple, Jr., of aggravated robbery, a first-degree felony. *See* Tex. Penal Code Ann. § 29.03. In his sole issue, appellant argues that the trial court erred in denying his motion to suppress his custodial statement because he did not voluntarily, knowingly, and intelligently waive his rights. We affirm.

# I.    BACKGROUND

On September 6, 2018, a Brazoria County grand jury charged appellant by indictment with one count of aggravated robbery, alleged to have been committed on or near June 28, 2018. Appellant pleaded not guilty and proceeded to trial before a jury.

At trial, Alexzander Ybarra, the victim of the aggravated robbery, testified that on June 28, 2018, he and appellant went to two locations to collaborate on music, but upon arriving at each location, were not able to access the locations. They agreed to collaborate another time. Jaelen Sparks, appellant's cousin, who had been riding in the backseat, moved to the front passenger seat, and appellant, who had been riding in the front passenger seat, moved to the backseat. Ybarra began driving them home, and appellant removed a gun from a zippered bag and began playing with the gun, admitting it was loaded. Ybarra repeatedly asked appellant to put the gun away, but appellant did not. Sparks did not intervene. Ybarra then testified that he saw the barrel of the gun pointed at him in his peripheral vision, and appellant shot him in the head. After being shot, Ybarra testified that he thought he was going to die, and decided if he was going to die "everybody else is going to die too." He attempted to crash the car, but Sparks steadied the car by grabbing the wheel. After struggling with appellant, Ybarra was able to escape from the moving car and attempted to get help. After knocking on several house doors nearby, 911 was called and an officer arrived at the scene. Ybarra was life-lighted to Hermann Memorial Hospital in Houston.

White testified that Sparks and appellant arrived at her house late at night on June 28, 2018 in a car that did not belong to appellant. White testified that appellant seemed "kind of off" and she felt like appellant might have been on drugs when he shot Ybarra because he "wasn't himself." White testified that she,

2

Sparks, and appellant were detained by the police shortly after they drove in Ybarra's car to Avenue J where appellant passed a backpack from the car to an acquaintance named K.J.

Investigator Jarrad Norris testified that he interviewed appellant—who Ybarra had already identified as the assailant—using a pocket recorder. Appellant objected when the State moved to introduce Norris's recording of the interview, asserting that appellant never affirmatively waived his rights and that all the requirements of article 38.22 were not satisfied. *See* Tex. Code Crim. Proc. Ann. art. 38.22. The matter was argued outside the presence of the jury. The court allowed the State to lay an additional predicate outside the presence of the jury. The State conducted a voir dire examination of Officer Norris, who testified that appellant understood English, understood the questions asked of appellant, and was not threatened or promised anything for making a statement. Officer Norris further testified that there was no non-verbal pressure or force exerted toward appellant, and that *Miranda* warnings were read to appellant in their entirety. On cross-examination, Norris admitted appellant was in custody, was not shown his *Miranda* warnings in writing, appellant was not asked to initial, sign, or acknowledge *Miranda* warnings in writing, and he did not get an explicit answer to the question as to whether appellant intelligently, knowingly and voluntarily waived his *Miranda* rights. Norris did not ask appellant this question a second time, and was unaware of appellant's state of mind, whether appellant was under the influence of any medication, and was unaware of appellant's criminal history, educational background other than high school, and did not know if appellant had been read his rights before.

Appellant re-urged his objection to Norris's testimony, arguing that appellant did not voluntarily waive his rights because he never affirmatively

3

answered Norris's question regarding the waiver of his rights. The trial court overruled appellant's objection outside of the presence of the jury, but allowed appellant to re-urge his objection to the statement in the presence of the jury, and again overruled the objection. The trial court granted the request of appellant to read a limiting instruction. Prior to the playing of the recording of appellant's statement, the court read the following instruction to the jury:

> You're instructed that you're getting ready to hear evidence in State's Exhibit 101 where the defendant is giving a statement. You cannot consider said statement unless you find that the defendant knowingly, independently, and intelligently waived his rights and beyond a reasonable doubt voluntarily made the statement.

Before the jury, Norris testified that he did not, and no one with his agency, threatened, coerced, or bribed appellant in any way into speaking to him. He also stated that at no point during the interview did appellant attempt to leave; instead, appellant spoke with Norris without ever asking for an attorney or invoking his right to remain silent. Norris read appellant his *Miranda* rights, and asked appellant if he understood his rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Appellant responded "yeah." When Norris asked appellant if he knowingly, intelligently, and voluntarily waived those rights and wished to speak to Norris, appellant responded, "about what?" Norris and appellant continued talking without appellant giving an affirmative or negative response to Norris's question concerning the waiver of appellant's rights. During the interview, appellant denied knowing Ybarra and denied shooting anyone. Norris testified that appellant's demeanor during the interview was "extremely calm, no agitation, very level." Based on their discussion, Norris testified that appellant understood the English language and that based on appellant's responses, appellant seemed to understand what was being asked of him. Norris did not smell any alcohol on appellant. Norris testified that he asked appellant directly about the events of that night, and

4

appellant denied having any knowledge of what happened and again denied shooting Ybarra. Norris ended the interview when it became clear that appellant was not going to change his testimony.

The jury charge included a voluntariness instruction, which required the State to prove beyond a reasonable doubt that appellant knowingly, intelligently, and voluntarily waived his rights before the jury could consider appellant's statement. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6.

The jury found appellant guilty of aggravated robbery and assessed punishment at thirty years' imprisonment in the Texas Department of Criminal Justice—Correctional Institutions Division. The trial court then filed the following relevant findings of fact and conclusions of law:

6) The defendant was advised during the recording by Investigator Norris of his Miranda rights.

7) After the Miranda rights were read to the defendant, Investigator White asked the defendant if he freely and voluntarily waived his rights pursuant to Miranda.

8) The defendant did not respond to the question if he knowingly, intelligently and voluntarily agreed to waive those rights and agreed to speak to the Investigator in the recorded interview.

9) The defendant did inquire to Investigator Norris about what he wanted to talk about after his Miranda warnings were read to him.

10) The defendant continued to speak to Investigator Norris after his Miranda warnings were read to him.

11) Investigator Norris while questioning the defendant did not threaten or promise the defendant anything to induce the defendant to continue talking to him. Investigator Norris also did not authorize anyone else to exert pressure on the defendant to induce him to continue talking to him.

12) The defendant's recorded statement was properly recorded

5

in an audio video format in accordance with Article 38.22 of the Code of Criminal Procedure.

13) There is no evidence of any coercion, promise or intimidation to the defendant in the taking of his June 29, 2018 statement.

14) During the recorded interview of June 29, 2018, the defendant never invoked his right to counsel.

*See id.* Appellant filed a timely appeal.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion under a bifurcated standard of review. *See Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018); *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). At a motion to suppress hearing, the trial court is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony. *See Lerma*, 543 S.W.3d at 190. Thus, we afford almost complete deference to the trial court's findings of facts, but we review de novo mixed questions of law and fact that do not depend on credibility or demeanor. *See id.*; *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Scott v. State*, 572 S.W.3d 755, 760 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We view the evidence in the light most favorable to the trial court's ruling, and the trial court's ruling will be sustained if it is reasonably supported by the record and correct under any theory of law applicable to the case. *See Miller v. State*, 393 S.W.3d 255, 262 (Tex. Crim. App. 2012); *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Coleman v. State*, 627 S.W.3d 340, 342 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd).

### B. VOLUNTARY WAIVER

6

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress because he never knowingly, intelligently, and voluntarily waived his *Miranda* rights.

## 1. Applicable Law

Article 38.22 of the Code of Criminal Procedure establishes procedural safeguards for securing the privilege against self-incrimination. *See* Tex. Code Crim. Proc. Ann. art. 38.22; *Joseph v. State*, 309 S.W.3d 20, 23–24 (Tex. Crim. App. 2010).[1] Among its requirements, it provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3. The warning must inform a defendant of the following rights:

(1) [H]e has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time[.]

*See id.* art. 38.22, §§ 2(a), 3(a)(2). The statute contains two distinct elements

---

[1] Article 38.22 represents the statutory analogue of the *Miranda* warnings. *See* Tex. Code Crim. Proc. Ann. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

pertaining to a statement's admissibility: the defendant's receipt of the prescribed warning and his waiver of the rights set out in the warning. *See Joseph*, 309 S.W.3d at 23–24.

The State bears the burden of establishing by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his rights. *See id.*; *see also Bolden v. State*, No. 14-17-00411-CR, 2019 WL 1030168, at *5 (Tex. App.—Houston [14th Dist.] Mar. 5, 2019, pet. ref'd) (mem. op., not designated for publication). It is not required that the recording of the accused's statement contain an express waiver of rights. *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Umana v. State*, 447 S.W.3d 346, 356 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). A waiver of rights may be inferred from the actions and words of the person interrogated. *Joseph*, 309 S.W.3d at 25; *Bolden*, 2019 WL 1030168, at *5; *see Umana*, 447 S.W.3d at 356 ("Although a valid waiver is not presumed, either from the silence of the accused after warnings are given or from the fact an admission is obtained, it can be inferred from the actions and words of the interrogated person."). In evaluating whether appellant knowingly, intelligently, and voluntarily waived his rights, we use a two-pronged test, in which we inquire: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *See Joseph*, 309 S.W.3d at 25. We look to the totality of the circumstances in determining whether a statement was made voluntarily. *Id.*; *Cervantes-Guervara v. State*, 532 S.W.3d 827, 834 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

2.    **Application**

8

Here, the State conceded that appellant was in custody when Norris recorded appellant's oral statement. Thus, to be admissible at trial, we must determine if appellant freely, knowingly, and voluntarily waived his rights prior to giving the statement. *See* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2(a), 3(a)(2).

Appellant argues that he never explicitly consented to speak with Norris, that he did not waive his rights, and that the totality of the circumstances reveals that he was coerced into speaking at a time when he was possibly impaired. As evidence of this, appellant claims that he never signed a *Miranda* warnings card in which he acknowledged his rights and his intent to waive them, unlike the defendant in *Joseph*. *See id.* However, in *Bolden*, we rejected the idea that a *Miranda* warnings card was required to demonstrate the defendant's understanding. *See Bolden*, 2019 WL 1030168, at *5. And as stated in *Joseph*: "The question is not whether [a]ppellant 'explicitly' waived his *Miranda* rights, but whether he did so knowingly, intelligently, and voluntarily." *Joseph*, 309 S.W.3d at 25.

In the present case, the trial court's findings of fact are supported by the record. Further, the totality of the circumstances surrounding the interview with Norris demonstrates that appellant waived his rights knowingly, intelligently, and voluntarily.

The record demonstrates that after Norris read appellant his rights, appellant indicated that he understood his rights. In response to being asked if he voluntarily waived those rights and wanted to speak to Norris, appellant asked, "about what?" At no point did appellant request an attorney or ask that the interview be terminated. *See Cervantes-Guervara*, 532 S.W.3d 839 ("A defendant who does not want to speak to the police without counsel present must assert that right to the police when he is given the *Miranda* warnings."). During the approximately seven-

minute interview, appellant spoke freely with Norris, with no indication of threats, bribery, or coercion.

The only factors remaining to support appellant's claim are his relative youth and White's testimony that appellant might have been under the influence of drugs because he seemed "kind of off" that evening. However, "[t]he Texas Court of Criminal Appeals has held that youth, intoxication, mental capabilities, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22, but they are factors for the factfinder to consider." *Id.* at 834 (citing *Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008); *Umana*, 447 S.W.3d at 350). In *Cervantes-Guervara*, the defendant's age was not specified, but he claimed to have a learning disability, a fifth-grade education, and an IQ of seventy. *See id.* at 838. However, the officer testified that he did not have to use "simple words" to communicate with the defendant, and the defendant was responsive during questioning and seemed to understand what was being asked of him. *See id.* Accordingly, we held that this evidence supported the trial court's finding that appellant's waiver was made with full awareness of the nature of his rights and the consequences of waiving them. *See id.*

Likewise, in the present case, Norris testified that based on his answers, appellant seemed to understand the questions he was being asked. For example, when Norris asked if appellant knew Alex Ybarra, appellant responded by asking if Norris meant a female Alex that he knew from West Columbia. Norris noted that appellant seemed calm, coherent, and responsive during the interview, and testified at trial that, based on his experience as a peace officer, appellant did not appear to be intoxicated on drugs or alcohol. This characterization of appellant is consistent with what can be heard on the recording of the interview.

Viewing the evidence in the light most favorable to the trial court's ruling,

we conclude that appellant's waiver was made voluntarily, knowingly, and intelligently. *See id.* 839; *see also Umana*, 447 S.W.3d at 356 (concluding that totality of the circumstances supported an implied waiver of rights when defendant responded with "Uh-huh" when asked if he understood his rights and defendant did not invoke his rights during the interrogation). The trial court did not abuse its discretion when it overruled appellant's motion to suppress regarding the admission of his oral statement to Norris. *See Joseph*, 309 S.W.3d at 25; *Bolden*, 2019 WL 1030168, at *5.

We overrule appellant's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Christopher and Justices Hassan and Poissant.
Do Not Publish — Tex. R. App. P. 47.2(b).

11