

# NUMBER 13-24-00471-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOSE ARNULFO DELGADO,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice West**

Appellant Jose Arnulfo Delgado appeals his conviction for continuous sexual abuse of a child, a first-degree felony, and indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 21.02(b), 21.11(d). By one issue, appellant argues the trial court erred by denying his motion to suppress his statements to law enforcement because the interviewing officer coerced or manipulated him into making

incriminating statements. Because appellant's complaints regarding coercion and psychological manipulation are not supported by the evidence, we affirm.

## I. BACKGROUND

This case involves delayed outcries of sexual abuse from two child victims. Appellant was initially interviewed about the outcries by local law enforcement on August 25, 2020, while appellant was in jail on an unrelated DWI charge. Before the interview began, appellant was given *Miranda* warnings. During the interview, appellant denied all the allegations and indicated he would be willing to participate in a polygraph test.

On September 7, 2020, appellant met with Texas Department of Public Safety agent Chris Ybanez for the polygraph test. Appellant was still in jail on the DWI charge and had not been arrested on the child abuse charges. The meeting was recorded. The first thirty minutes of the meeting was casual conversation between appellant and Ybanez, completely unrelated to the charges or investigation.

At the hearing on appellant's motion to suppress, Ybanez testified this first portion of the process is referred to as "rapport building." After the "rapport building" stage, appellant was presented with and signed his *Miranda* warnings. *See* TEX. CODE CRIM. PROC. ANN. art 38.22; *Miranda v. Arizona*, 384 U.S. 436, 694 (1966). Ybanez then proceeded to ask questions related to the child abuse allegations, and appellant made incriminating statements. Thereafter, appellant was charged with continuous sexual abuse of a young child and indecency with a child by sexual contact.

Defense counsel filed a motion to suppress appellant's statements, arguing that his statements were made involuntarily. The recording of the interview was presented to the trial court during the suppression hearing. Upon viewing the interview and hearing

testimony and argument of counsel, the trial court denied appellant's motion to suppress. Appellant was subsequently convicted of both counts. This appeal ensued.

After the notice of appeal was filed, we abated the appeal and instructed the trial court to issue findings of fact and conclusions of law regarding the voluntariness of appellant's recorded statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6; *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013) ("[W]ritten findings are required in all cases concerning voluntariness."). Relevant here, the trial court found:

> 4. Prior to being Mirandized, [appellant] and law enforcement had a 30 minute conversation that did not constitute an interrogation as no matters of the instant case were discussed.
>
> . . . .
>
> 6. At no relevant time was there ever any indication that [appellant]'s statement was anything other than voluntary and the evidence regarding [appellant]'s statement indicated voluntariness in every aspect.
>
> 7. There was no overlapping content of the two statements since the pre-Miranda discussion contained nothing regarding the case at hand. The pre-Miranda discussion . . . was not an interrogation.
>
> 8. There was no testimony or evidence indicating that the recorded statement was involuntary in any aspect. Agent Ybanez testified that [appellant] showed no reservations about speaking to him and did not indicate in any way that he did not want to be there. [Appellant] did not show any signs of intoxication or that he was not in his right mind. [Appellant] is seen and heard specifically being read his Miranda warnings and waiving them all. At no point in the video was [appellant] coerced or forced to give an involuntary statement and no such evidence was ever presented by [appellant].

The trial court concluded that appellant's "pre-Miranda discussion with law enforcement was not an interrogation, he was properly Mirandized when subsequently interrogated, and his statements to law enforcement were voluntary."

## II.  MOTION TO SUPPRESS

Appellant argues that his statements to law enforcement were involuntary because agent Ybanez used "coercive interrogation tactics" and "psychological manipulation" to induce him into making incriminating statements, in violation of his Fifth Amendment rights. *See* U.S. CONST. amends. V, IV.

### A.  Standard of Review and Applicable Law

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). "We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id*. We review de novo the trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *Id.* At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). If the trial judge's decision is correct under any theory of law applicable to the case, the decision will be sustained. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). Voluntariness is determined by looking at the totality of the circumstances. *Cervantes-Guervara v. State*, 532 S.W.3d 827, 834 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Griffin v. State*, 765 S.W.2d 422, 429–31 (Tex. Crim. App. 1989)).

Generally, a defendant may claim that his statement was involuntary under three theories: (1) the State's failure to comply with article 38.22; (2) its failure to comply with *Miranda*; and (3) violation of due process. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex.

Crim. App. 2008). Where, as here, an involuntariness claim is advanced under the latter two theories, a confession is involuntary "only when there is police overreaching." *Id.* at 169–70. To prevail, the appellant must show "(1) that police engaged in activity that was objectively coercive, (2) that the statement is causally related to the coercive government misconduct, and (3) that the coercion overbore the defendant's will." *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020). Thus, the threshold issue is whether Ybanez "objectively engaged in coercive tactics." *Id.* at 496; *see id.* at 496 n.5.

**B.      Analysis**

Appellant first argues that his statements to law enforcement were involuntary because Ybanez employed an impermissible two-step interrogation tactic to elicit them. He argues that Ybanez "us[ed] calculated tactics designed to elicit trust" in the "rapport building" phase of the interview which "manipulate[d] his willingness to speak before *Miranda* warnings were administered."

A "two-step" interrogation tactic occurs when a law enforcement officer interrogates a suspect without giving him his *Miranda* warnings, obtains a confession from him, then gives him the *Miranda* warnings, and gets him to repeat the confession he made previously. *See Missouri v. Seibert*, 542 U.S. 600, 611–12 (2004); *Vasquez v. State*, 483 S.W.3d 550, 553 (Tex. Crim. App. 2016). However, appellant made no incriminating statements before he was issued his *Miranda* warnings. Thus, this doctrine is inapplicable. *See Seibert*, 542 U.S. at 611–12; *Vasquez*, 483 S.W.3d at 553.

Appellant next argues that his statements were involuntary because Ybanez used "coercion and psychological manipulation" to elicit his confession. He contends that Ybanez's "rapport building" was intended "to disarm [a]ppellant before shifting to

5

accusatory questioning." He also argues that "he was particularly vulnerable to coercion" because he "was already in custody, wearing an orange jumpsuit, and was not free to leave," and he had "limited education and lack of prior legal experience."

In this case, appellant was calm and cooperative throughout the interview. Ybanez was not hostile, aggressive or threatening toward appellant. The rapport-building part of the interview did not include any conversation related to the charges or investigation. Appellant suggests that the tactics employed by Ybanez were coercive because they were designed to elicit trust and manipulate his willingness to speak. But, by agreeing to the polygraph during his previous interview, appellant had already expressed his willingness to speak with Ybanez.

Moreover, prior to executing a waiver of his *Miranda* and article 38.22 rights, Ybanez presented a polygraph examination consent form to appellant. He explained that the form was for him to confirm that no one had promised him anything or put pressure on him to take the polygraph and that it was strictly voluntary. At that time, Ybanez reminded appellant that he could stop the interview at any time. Thereafter, Ybanez read the consent form to appellant, which states: "I voluntarily consent to this examination of my own free will, and state that no duress, threats or coercion have been placed upon me to take this examination." After reading that portion of the form, Ybanez explained that "duress means that nobody has pressured you, threats means of course you know threaten you, and [coercion] means that nobody has tricked you." At that point, appellant acknowledged that he understood. Reading the form, Ybanez again informed appellant that he had the right to stop the polygraph at any time. He explained that appellant will be asked "questions of [a] sexually oriented nature that are pertinent to the investigation," at

6

which point Ybanez explained "pertinent" means things that are important for the investigation. Thus, at the end of the "rapport-building" portion of the interview and before appellant was questioned about the sexual abuse accusations, he had been given his 38.22 warnings, he was informed that he could stop the interview at any time twice, and he acknowledged that he was voluntarily consenting to participate in the polygraph, was not under duress, and had not been threatened or coerced at any time.

From the facts above, we cannot conclude that Ybanez engaged in coercive tactics. *See Lopez*, 610 S.W.3d at 496; *see also Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (en banc) ("Absent [coercive] police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."). Accordingly, we hold the trial court did not abuse its discretion in denying appellant's motion to suppress. Appellant's sole issue is overruled.

## III. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
16th day of October, 2025.